To our next case, In Re. Wang Real Property. Who left these? My law clerk. Good morning, counsel. Good morning, Your Honor. I'm glad you made it. May it please the court, my name is Jean Wang, counsel for the appellant. The bankruptcy court lifted the stay to allow the Han creditor to extend their judgment lien. But that is clearly erroneous, because the stay has no impact on the lien renewal. The automatic stay prescribed by the Bankruptcy Code 362A does not even apply to renewal actions, according to In Re. Morton, in which the court found that this bankruptcy stay was sought in bad faith, waiting for the lien to expire. The bad faith finding was based on a determination that the debtor was trying to run out the clock on the lien and prevent and cause the extension of the lien. Right? But that's not true, because the Han creditor waited until the eighth year to start enforcement of the lien. Eight out of ten. Okay. Eight out of actually 20. Right? And renewal is their obligation to do, and which they actually did in February of 2018. And that renewal was going to be granted, if not for their own procedural error of not naming the necessary parties. We were not a party to the original judgment lien in 2009. And the lien that they renewed, and were in the process of renewing, was a year and a half before the bankruptcy petition was filed. And so our bankruptcy filing — What was the bankruptcy purpose of the petition, then? — is to have time to pay off and reorganize and pay off this debt, because all of a sudden this $5 million debt has come knocking on Appellant's door. And Appellant was not able to immediately pay off. What do you mean all of a sudden? I thought this has been pending for quite some time. No. The judgment lien was from a 2009 New York County action that Hans filed against Prince Development, among other, other parties, in which Wangreal Property was not a party to. Wangreal Property wasn't even incorporated at the time. It wasn't even formed at the time. This was years before Wangreal Property. And that action was — nor the principles of Wangreal Property were not applied to that. Well, when did Wangreal Property become aware of the lien? It was only when they started enforcement of the lien, which was in the eighth year of their own lien. And so all of a sudden this debt comes, $5 million, while — and this is after Wangreal Property had gotten Department of Building approval for a six-story building and hired architects, contractors, and was in the process of about to build on this vacant lot a six-story building. And then there's this $5 million debt. Let me try it a different way. You filed a petition for bankruptcy the day before a sale was scheduled. No. No. No. The first time that we found out about the debt was when Hong Predators scheduled a sheriff's sale, which is just a sale that they — that they order, right? And that was in October of 2017, the eighth year. And that was the first time we knew about it. So we fought the — we fought the debt, all right, as whether or not it's a lien against the property, whether or not the lien ran with the property. So we were in State court to dispute whether or not the lien ran with the property. I definition the lien was on the property. I'm sorry? Your Honor? The lien was on the property, wasn't it? No, it wasn't, because the principals — the principals, the Wangs, had purchased the property from the Prince Development Company, which was the defendant in their case, in 2004, before — before their judgment in 2009. And so this was prior to the judgment. So there was a — there was a — there was a live controversy as to whether or not there was — the lien ran with the land. And so there was a lot of State litigation as to whether or not the lien ran with the land. And it was only after two years or so, until 2018 — well, until we filed the bankruptcy petition that we gave up, and the State courts found that there was a That's why the bankruptcy was filed now and not earlier. Because if we were doing this only in bad faith, then we would have filed it the first day the sheriff's sale came, which was in October of 2017. The sheriff's sale was rescheduled several times. Several times. Right, several times. And that's because there were many State actions pending arguing about the lien, because there was also a foreclosure that was part of this. The Hahn creditors took over the — assigned the mortgage on the property, and then was — there was also a foreclosure action that was going on at the same time. And we paid off the mortgage on the property to the Hahn creditors of about a million. And so this was all going on during this time. So we were able to pay off a million, but then we weren't able to pay off five million right away, and whether or not that amount was accurate was also a dispute. So that's what we were doing in State court for the past two years until we lost. And so now we're ready to pay off the debt, and that's why we file for bankruptcy now. I mean, the point of bankruptcy is to reorganize, right? This — the proper time wasn't given to us. We have — even as a single asset, we're given 90 days to put a plan together to amend any schedules that need to be amended and to file any objections. And this — this motion to lift the stake came on the 13th day, and not enough time to — to reorganize and to put — to even put together a plan to do what — what the law allows us to do, and to make a bad-faith finding with — with not even — with just oral argument on a day where the debtor himself did not appear, and with just oral argument between — between attorneys is not a sufficient hearing to flesh out all the evidence and all these complicated facts that have been going on for the past 10 years between the Han and the Wangs. We believe strongly in finality in the Federal system. Yes, Your Honor, but what about accuracy and — and — and to avoid clearly erroneous errors and to apply the proper standards rather than abuse the discretion? I mean, where are the Sonex factors here? How did CTC factors become the factors for lifting a stay when, for the — for the — for the years since Sonex was established by the Court repeatedly, right, case after case, right, Sonex is the proper factors for lifting a stay, right? If there — if this case was — if this case was in bad faith, why not dismiss it right away? Why did the Han creditors and Banksy Court agree that only lifting the stay rather than dismissing the case? And the factors are completely different. The Sonex factors that are applicable here are the comparison between what is being stayed, the other state litigation that's being stayed, and — and this action. And whereas there is no other — other litigation, what — what there was is a sale. That's it. There's no — there's no other litigation going on, right? We're — we're not parties. It's not a two-party dispute. We're not parties to any action that — that they had. The 2009 judgment, we're not parties. We have — we have no say in whether or not his lien is extended or not. And so what about — what about the proper factors that are applicable here? What about the — the possibility of paying off that money instead of just allowing the Han creditors to just eat up this — this asset that the Wangs have been fighting for even before the Hans got their judgment? What about — what about the equities involved here of — of years of — of investment into this — this real estate? And finally, a — a — a approved plan for a six-floor building. And — and — and my — my father, who's — who's the principal of Wang Real Property, I mean, he's gone through years and — and now has Parkinson's and just fighting for this property, right? He was at his peak when he had purchased the property from Prince Development. And then it was Prince Development that went into litigation with the Hans that ultimately resulted in their judgment lien, whereas my father and Wang Real Property had nothing to do with any of that. And all of a sudden, this judgment is now — is now — is now going to eat up this I mean, that's not fair. All right. Your time has expired, but you have reserved two minutes for rebuttal. Thank you, Your Honor. We'll hear from the appellees. Your Honor, may it please the Court, the standard of review is an abuse of discretion standard. I don't think that Chief Bankruptcy Judge Craig abused her discretion in lifting the stay. There were two grounds that Bankruptcy Judge Craig lifted the stay. The first was that it was a bad faith filing, and I think there are five factors that show it was a bad faith filing. First, it was an eve of foreclosure sale filing. Number two, as Judge Craig indicated during the hearing, and as the debtor admitted, their plan was to run out the clock on the Hans judgment lien. The third was that based on the face of the petition, on it by itself, there was no equity in the property. Number four, it was a Chapter 11 petition, which is a reorganization chapter in the Bankruptcy Code, but there was no business to reorganize. And the fifth was it was a two-party dispute. The Hans and the Wangs were the two parties to the case. So you had five factors showing that it was a bad faith filing. The second ground that Judge Craig lifted the stay was that the property was not necessary for a reorganization, and the reason for that ties into the fact that the property had no equity. So I don't think that Judge Craig came remotely close to abusing her discretion. I think she did the right thing. One of the things that happened in this case, and it was mentioned in argument by Appelli's counsel, was that there was a delay in the Hans enforcing the judgment lien. And the reason for that is obvious from the record. The mortgage in question held a senior position, and that mortgage was satisfied in December of 2016. And that set forth in the supplementary appendix at page 106. Once that mortgage was satisfied, the judgment lien of the Hans rose to a and to sell the property. The last point is Appelli's made a motion for this court to take judicial notice. This court decided to take judicial notice of the sheriff's deed, conveying the property to the Hans. So by definition, there is nothing left for the bankruptcy court to reorganize. If you go through the bankruptcy petition on supplementary appendix pages 46 to 49, you will see that the only asset of the debtor in bankruptcy was this property. And that property is no longer owned by them. So there is no reason for this case to go back to the bankruptcy court because there is nothing left to reorganize. And there never was anything left to reorganize because they never had a business. Sotomayor's counsel told us they had a plan to build a six-story building. They had hired architects. I assume they very well may have, but it doesn't detract from the fact that they acquired title subject to the judgment lien of the Hans. They may have had plans to move for a variance and build a 40-story building. But again, that doesn't detract from the fact that they took title to the property subject to the Hans judgment lien. And that point has been judicially established in the state courts several times. Unless any member of the panel has any questions, appellees rest on their brief. Thank you, counsel. Ms. Wang. So you took the title, as opposing counsel just told us, subject to the lien of the Hans. Isn't that correct? No, Your Honor. How could that not be correct? Because, like I said earlier, the Wangs had purchased, they assigned a contract of sale with Prince Development Company before the judgment had occurred. So as the equitable title lien, title owner, due to the execution contract, the lien came afterwards. And so the judgment came afterwards, so it's not a lien on the contract. That was what we were arguing with the state courts. But we lost, and we're not here to dispute that anymore. Is what Ms. Wang says correct? Your Honor, it's directly contradicting. Speak into the microphone. I apologize, Your Honor. There was a decision from state court, Supreme Court, Queens County, which explicitly says the Wangs took title to the subject property subject to the Hans judgment lien. And so that came first. Well, it was judicially established that they took title. The First Department, a New York State intermediate appellate court, said that decision was binding. So for this court to say perhaps the state courts got it wrong, I think would be a violation not only of res judicata, but it would call into play the Rooker-Feldman Doctrine. We would have a federal court saying quite a few state court judges got it wrong, including a state court intermediate appellate court. The issue was litigated. The Hans won. Wang property lost. It's a done deal. Thank you, counsel. So that's what we were told, and that's what the paper seemed to say, that the Wangs took this subject to the lien. Right, and that was discovered after 2017. The First Department case that he was referring to was only in the recent years, and the state litigation was for that purpose. And we're not here to relitigate, Your Honor. We're not here to relitigate. In which case you took it subject to the lien. Yes. Yes. We concede that now because that's what the state courts have decided, and we're here to pay it off. And that's the only reason why we're in bankruptcy court, to pay off this debt and to reorganize and pay off the debt. But it was sold. The property was sold. Your Honor, like you asked earlier, you like finality, and the list stay order is final, and that's why we're able to appeal to the Second Circuit. But it's sold, and that's not something that this Court can reverse that. It was a sheriff's sale orchestrated by the Han creditors. There was no one else at the sale except Wangs and the Hans. No member of the public was at the sale. You could have purchased the property. We didn't have the money, Your Honor. And if we had the money, we wouldn't even file for bankruptcy. We would just pay it off. They purchased it for 3-point-something, but it was based on credit. They didn't even pay with actual cash, which is what you're required to at a sheriff's sale. They paid with credit. Credit is only allowed in bankruptcy sales. That wasn't bankruptcy sale. That was a sheriff's sale, an execution sale that they scheduled. They didn't advertise. There was no member of the public. This was bound to happen with the list stay order. And so mootness is not a factor, Your Honor, because as this Court has determined many times in terms of finality, the domino effect of a list stay order being granted and then the sale actually happening does not divert this court of jurisdiction because this court can easily issue a non-protong order and remand to the bankruptcy court and non-protong that title. But we don't think the bankruptcy court got it wrong. Your Honor, the bad faith finding was a leap because it needs to be a careful and nonchalant what the bankruptcy did court. Do you have an opportunity to argue against it? No, I didn't. I didn't. So the factors about the six-story building and the plans and we had the money to pay a $1 million foreclosure off, and it was also to the Hahn creditors. And also the Hahn creditors over the past eight years had obtained money from other defendants from that judgmental lien. There were like eight parties, eight defendants in their judgment, in their New York County 2009 judgment, and they were able to get payment. But we didn't know how much payment they got because we came into this late. And so none of that was fleshed out. All there was was one appearance, and it was the first appearance on the motion of the attorney, an attorney just orally arguing. We weren't even present. We didn't know that we had the opportunity to be present. We didn't have the opportunity to present any of this evidence. This should have been a more careful review before a bad faith finding is made. This Court needs to, in the district courts and in the bankruptcy courts right now, these bad faith findings are based on single assets and all these factors that have nothing to do with Sonex. What happened to the Sonex factors? Right now it's CTC factors. But that's based on dismissal of an action, not for a live stay. All right. We have your argument. Thank you very much. We'll reserve decision. Thank you, Your Honors. The next two cases on our calendar are on submission. So I will ask the clerk to adjourn court. Court is adjourned. You can help me thank the others.